**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **MISTRET VOKSHI,** | ) | |
| **Plaintiff,** | ) | |
| **vs.** | ) | **Case No. 4:11CV357SNLJ** |
| **SEMCO PLASTIC CO., INC.,** | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

*Pro se* plaintiff has filed this Title VII employment discrimination action alleging that he was terminated from his job as a machine operator by defendant on the basis of national origin discrimination. This matter is before the Court on the defendant's motion for summary judgment [32], filed May 11, 2012. As of today's date, plaintiff has failed to file any type of responsive pleading to the instant motion. This matter is set for trial on the Court's September 24, 2012 trial docket.

The appropriate standard for consideration of all motions for summary judgment, including summary judgment motions filed in employment discrimination cases is as follows:

> Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. The movant bears the initial responsibility of informing the district court of the basis for its motion, and must identify those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.

Torgerson v. City of Rochester, 643 F.3d. 1081, 1085 (8th Cir. June 1, 2011)( internal citations and quotations omitted); *see also*, Jackson v. United Parcel Service, Inc., 643 F.3d. 1031, 1042 (8th Cir. 2011)(*citing* Torgerson*, supra.*).

The Court has reviewed the legal memorandum, affidavits and exhibits submitted by the defendant in support of its motion for summary judgment. The defendant has met its initial burden to demonstrate that "there is no genuine issue as to material fact and the moving party is entitled to judgment as a matter of law." Poller v. Columbia Broadcasting System, 368 U.S. 464, 467 (1962). Once the defendant has met its burden, the burden shifted to the plaintiff to "set forth affirmative evidence, specific facts, showing that there [was] a genuine dispute on [those] issue[s]." City of Mt. Pleasant v. Associated Electric Coop., 838 F.2d. 268, 274 (8th Cir. 1988). The plaintiff has failed to meet this burden in that he has failed to file any responsive pleading to the defendant's summary judgment motion.

Furthermore, in compliance with Local Rule 4.01, defendant has filed with its summary judgment motion a proper Statement of Uncontroverted Material Facts [34]. Pursuant to Local Rule 4.01(E), "[A]ll matters set forth in the statement of the movant shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party." Inasmuch as plaintiff has failed to oppose the defendant's motion, and thus failed to specifically controvert the matters set forth in the defendant's statement of facts, such matters in defendant's statement are deemed admitted for purposes of the motion.[1]

Defendant Semco is engaged in the business of manufacturing various plastic products and parts for products as specified by its various customers at its plant in St. Louis County, Missouri.[2]

---

[1]The Court is not obligated to advise *pro se* litigants how or when to respond to motions for summary judgment. Plaintiff's *pro se* status does not excuse him from complying with all applicable Federal Rules of Civil Procedure, as well as the Eastern District's Local Rules. *See*, Bennett v. Dr. Pepper/Seven-Up, Inc., 295 F.3d. 805, 808 (8th Cir. 2002); Beck v. Skon, 253 F.3d. 330, 333 (8th Cir. 2001).

[2]Since plaintiff has failed to file any responsive pleading to the defendant's summary judgment motion, and has failed to contradict any portion of the defendant's Statement of Uncontroverted Facts [34], filed May 11, 2012, as required by Local Rule 4.01(E), the Court will simply recite from [34] those facts it deems relevant to the matter at hand.

As a plastic products and parts manufacturer, Semco uses two (2) different kinds of equipment: blow molding machines and injection molding machines. Semco employs individuals to operate both types of machines. An employee is assigned to operate one machine during each work shift. The employee operator can be assigned to either a blow molding machine or an injection molding machine at the beginning of their work shift. The operating employees are grouped into eight hour shifts. During each work shift both blow molding and injection molding machines are in operation.

Generally, the blowing molding machines are grouped together and the injection molding machines are grouped together in different areas of Semco's plant facility. Semco employs on each shift a supervisor to oversee the production of each type of machine.

Semco's production machines run continuously throughout a work shift. Machine operators remove the finished part from the machine and are then assigned to package or put the parts that have been properly molded per customer specifications on pallets for shipping. Parts that are produced that are not molded properly are considered "miss molded" and are to be discarded onto a scrap pile by the operator. It is Semco's policy not to ship "miss molded" parts to any customer.

Machine operators are entitled each shift to a ten (10) minute break from the operation of their assigned machine in the first part of their shift, a lunch break of thirty (30) minutes and a second ten (10) minute break after lunch. In order to accommodate these breaks, another employee is assigned to relieve the operator employee on his or her assigned machine for the break period in question. These employees are called "breakers" and they rotate from machine to machine, as each operator is relieved for their particular break pursuant to a predetermined schedule.

Each machine operator is trained in the proper use and operation of a production machine before being assigned to operate that machine during a work shift. During the relevant time-period, the employment terms and conditions of employment of Semco's machine operators were governed by a collective bargaining agreement (CBA) in place between Semco and Local 1 of the Service Employees International Union.

Under the applicable CBA, machine operators employed by Semco are subject to discipline by management if they fail to conduct themselves as required by Semco's work rules. A machine operator can be disciplined for performing substandard work in carrying out his or her assigned duties. A machine operator employee can be discharged from employment only for good cause. Affidavit of Jon Grubb, [38-Exhibit 2].

The disciplinary system in place pursuant to the CBA for machine operators was the same during the relevant time-period, and included both verbal and written warnings for misconduct. Semco maintains a written record of a verbal warning of improper conduct; however, there is no direct adverse consequences for receiving a verbal warning. Under the CBA, a machine operator who receives three (3) written warnings regarding the same category of misconduct within a six (6) month period is subject to being suspended from work for three (3) days without pay and he or she may be discharged for a fourth such violation occurring in the same six (6) month period. Grubb Affidavit [38-2], ¶14; Deposition of plaintiff Mistret Vokshi [35,36, and 37][3], pg. 38.

Written and/or verbal warnings of improper conduct by machine operators can be issued by an employee's supervisor or other members of Semco's management who observe or have first-hand knowledge of the behavior or misconduct in question. Grubb Affidavit [38-2], ¶15.

Plaintiff Vokshi was hired by Semco on October 29, 2007 as a machine operator and he continued his employment in this capacity until he was discharged by Semco on December 16, 2010. During the relevant time-period, Vokshi was assigned to the second work shift which started at 4:00 p.m. and finished at 12:00 p.m. Grubb Affidavit [38-2], ¶10. During the relevant time-period, the supervisor assigned to oversee operations of the blow molding machines on Semco's second shift was Tim Sumlar. During the relevant time-period, the supervisor assigned to oversee operations of the injection molding machines on Semco's second shift was John Burda, with Donald Higgins as the assistant supervisor.

[3]Defendant e-filed plaintiff's deposition as three (3) separate filings [35, 36, and 37] with blocks of pages assigned to each filing. In the future, for judicial efficiency, counsel should file a notice of filing hard copies of complete depositions, while providing a courtesy copy of same to the Court. The Court, again for purposes of judicial efficiency, will simply cite to the lead filing [35] and the applicable page numbers.

Plaintiff was trained and able to operate all of the various different blow molding and injection molding machines used by Semco. Vokshi Deposition [35], pgs. 11, 13, and 56.

For the time-period beginning on July 7, 2010 through December 9, 2010, plaintiff was involved in four (4) separate incidents of substandard work resulting in four (4) different written warnings. These written warnings were issued by various management employees: Don Higgins, John Burda, and Jerry Lieberoff. A fifth written misconduct warning was issued to plaintiff on September 28, 2010 by Tim Sumnler for tardiness. Grubb Affidavit [38-2], ¶¶16, 19.

Plaintiff received a written warning on July 7, 2010 for substandard work because at the time he was outside the plant during work hours but not working. The warning was issued by Donald Higgins who was an assistant supervisor for the injection molding machines. Affidavit of Donald Higgins [38-5], ¶6; Vokshi Deposition [35], pgs. 57-60; Defendant's Exhibit [37-F].

On September 21, 2010 plaintiff received a second warning for substandard work regarding his productivity in operating his assigned machine. This warning was issued by John Burda, the second shift supervisor of the injection molding machines. Affidavit of John Burda [38-4], ¶6; Vokshi Deposition [35], pgs. 54-57; Defendant's Exhibit [37-E].

On September 28, 2010, plaintiff received a written warning for being tardy in returning to work at the conclusion of his break. Plaintiff was observed by two (2) co-workers in the break room several minutes after clocking back into work. Plaintiff had also clocked back into work late. This warning was issued by Tim Sumnler, the supervisor of the second shift blow molding machines at that time. Grubb Affidavit [35-2], ¶19.

During the relevant time-period, Jerry Lieberoff was Semco's Quality Control Manager. As Quality Control Manager, Lieberoff was in charge of overseeing Semco's efforts to produce parts and products of the highest quality in accordance with a customer's specifications. He, along with supervised inspector employees, made daily inspections of products prior to their shipment to Semco's customers. If an inspection was not made on the day of production, an inspector was able to ascertain from labeling on the product the machine that produced the product and the date of its production. In order to ascertain the name of the machine operator working the machine in question, inspectors would consult Semco's daily log sheets listing the

names of the machine operator employees, their respective shifts, and the machines they were assigned to during any particular shift.

In 2010, one customer in particular was extremely sensitive about the quality of the product it received; and Semco had been penalized financially for miss molded parts shipped to this customer. Machine operators who were involved in the production of parts for this customer were repeatedly cautioned about eliminating any miss molded parts form the finished product for shipment to this customer. Affidavit of Jerry Lieberoff [38-3],¶¶7-9. Due to this issue, Lieberoff often personally inspected the product before shipment to this customer.

On October 13, 2010, Lieberoff was inspecting product produced for this particular customer and discovered a large number of improperly produced and miss molded parts packaged for shipping. Upon investigation, Lieberoff ascertained that plaintiff was the operator of the machine in question that had produced the unsatisfactory product. Due to the number of deficient parts discovered and the given the need for quality parts especially for this particular customer, Lieberoff issued plaintiff a written warning for substandard work. Lieberoff did not consult with or ask for the advise of plaintiff's supervisors, Burda and Higgins, prior to issuing the written warning. Lieberoff Affidavit [38-3], ¶¶10-11; Defendant's Exhibit [37-D].

As a result of this written warning, and because it was the plaintiff's third written warning of substandard work within a six (6) month period, plaintiff, in accordance with Semco's disciplinary policy, was laid off work for three (3) days without pay.

On December 9, 2010 the machine plaintiff was assigned to operate produced miss molded parts unsuitable for shipping to Semco's customer. Some of those miss molded parts were still placed on pallets designated for shipment to Semco's customer. Lieberoff was inspecting production prior to shipment and discovered the miss molded parts. He traced their origin to plaintiff's machine. Plaintiff was issued a written warning for substandard work by Lieberoff on December 16, 2010 and because this was plaintiff's fourth written warning for substandard work within a six (6) month period, plaintiff was discharged from his employment with Semco. Grubb Affidavit [38-2], ¶22; Lieberoff Affidavit [38-3], ¶¶13-15; Plaintiff's Deposition [35], pgs. 33-35. Lieberoff did not consult with Burda and/or Higgins prior to issuing

this written warning. Lieberoff Affidavit [38-3], ¶13; Defendant's Exhibit [37-C]. On the written warning, plaintiff stated that he believed he was fired "because not like me." Defendant's Exhibit [37-C].

Plaintiff sought assistance from the Union in challenging his discharge[4]. The Union representative spoke with Grubb about the plaintiff's discharge. Grubb investigated the matter himself, and ascertained that plaintiff was the machine operator operating the machine in question, and was responsible for putting the miss molded parts on the pallets for shipment. Grubb affirmed the discharge. Plaintiff does not dispute that he was operating the machine in question that allegedly produced the miss molded parts, or that miss molded parts from this machine were found on the pallets ready for shipment. Plaintiff's Deposition [35], pgs. 17, 35-36. Plaintiff simply contends that he was not the only operator on the subject machine during the second shift on December 9, 2010. The Union took no further action regarding plaintiff's discharge. Grubb Affidavit [38-2], ¶¶25-26; Plaintiff's Deposition [35], pgs. 98-99.

During the relevant time-period, Semco employed twenty-five (25) machine operators on its second shift. Eleven or almost 45% of these machine operators on the second shift, including the plaintiff, were foreign-born individuals who had immigrated to the United States from some part of the former country of Yugoslavia. Grubb Affidavit [38-2], ¶27.

On December 22, 2010 plaintiff filed a charge of discrimination with the EEOC and the Missouri Commission on Human Rights (MCHR). [7], filed March 23, 2011. In it, plaintiff asserted that he had been discriminated on the basis of national origin. He stated:

> I believe I have been discharged due to my National Origin, Kosovo. I had been employed with the Respondent for approximately 3 years as a Machine Operator. On December 16, 2010 I was discharged. The Respondents **[sic]** reason due to two bad parts that came off my line. I had no work issues until a new supervisor stated approximately two months ago. This supervisor would refer to me as "Foreigner". I know

[4]Although the defendant contends that plaintiff "filed" a grievance with the Union, defendant has failed to file any exhibit evidencing a written grievance or any document evidencing whether plaintiff did indeed "file" a grievance with the Union. Furthermore, plaintiff testified at his deposition, that he did not actually "file" a grievance but instead spoke with a Union representative. He further contends that this representative spoke with Grubb, in plaintiff's presence, about giving plaintiff his job back. Plaintiff's Deposition [35], pgs. 97-98.

> of others who have done the same thing I am accused of and who were not discharged.

Document [7]. On February 24, 2011 filed the instant complaint; however, he failed to attach to it copies of his "Right-to-Sue" letters from either the EEOC or the MCHR. On March 23, 2011, the Court ordered plaintiff to submit copies of his "Right-to-Sue" letters within twenty (20) days of the date of the Order or risk dismissal of his cause of action. *See*, Court Order [6]. On March 23, 2011 plaintiff filed copies of his "Right-to-Sue" letters from the EEOC (dated March 21, 2011) and the MCHR (dated March 16, 2011). *See*, Document [7].

Defendant contends that plaintiff has failed to make a *prima facie* case for employment discrimination because he was not meeting the job qualifications at the time of his discharge. They contend that the four (4) substandard work written warnings evidence this fact. It further contends that even if plaintiff has made his *prima facie* case for employment discrimination, he still fails to successfully challenge the defendant's summary judgment motion because defendant has offered a legitimate, non-discriminatory reason for the discharge; i.e. the four (4) written warnings for substandard work, and plaintiff has failed to put forth any evidence that defendant's reason for plaintiff's discharge was a pretext for discrimination on the basis of national origin.

Although the plaintiff has failed to respond to the summary judgment motion, the Court surmises that based upon his deposition testimony and his administrative charge of discrimination, plaintiff believes his discharge was discriminatory because Donald Higgins on one occasion allegedly referred to plaintiff as a "foreigner" and because unidentified "others" have presumably manufactured miss molded parts and were not fired.

After careful consideration of the entire court record before the Court, the Court finds that no issues of material fact exist contradicting the strong evidentiary record that plaintiff was fired pursuant to Semco's disciplinary policy, and in accordance with the applicable CBA, for receiving four (4) written warnings of substandard work within a six (6) month period. Defendant is entitled to judgment as a matter of law.

Title VII provides that it is an unlawful employment practice for an employer to discharge any individual on the basis of such individual's race, color, religion, sex, or national origin. 42

U.S.C. §2000e-2(a)(1); *see*, Guimaraes v. SuperValu, Inc., 674 F.3d. 962, 972 (8th Cir. 2012). Plaintiff Vokshi can survive summary judgment in one of two (2) ways:

> The first is by proof of `direct evidence' of discrimination. Direct evidence in this context is not the converse of circumstantial evidence, as many seem to assume. Rather, direct evidence is evidence `showing a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivate' the adverse employment action. Thomas v First Nat'l Bank of Wynne, 111 F.3d. 64, 66 (8th Cir. 1997). Thus, `direct' refers to the causal strength of proof, not whether it is `circumstantial' evidence. A plaintiff with strong (direct) evidence that illegal discrimination motivated the employer's adverse action does not need the three-part McDonnell Douglas [Corp. v. Green, 411 U.S. 792, 802-03, 93 S.Ct. 1817, 36 L.Ed.2d. 668 (1973),] analysis to get to the jury, regardless of whether his strong evidence is circumstantial. But if the plaintiff lacks evidence that clearly points to the presence of an illegal motive, he must avoid summary judgment by creating the requisite inference of unlawful discrimination through the McDonnell Douglas analysis, including sufficient evidence of pretext. *See*, *e.g.*, Harvey v. Anheuser-Busch, Inc., 38 F.3d. 968, 971 (8th Cir. 1994).

Guimaraes, at 972-73 *quoting* Torgerson, at 1045 (*quoting* Griffith v. City of Des Moines, 387 F.3d. 733, 736 (8th Cir. 2004).

Plaintiff contends that one of Semco's supervisors, Don Higgins, referred to him as a "foreigner." A remark by a decisionmaker, in order to constitute direct evidence of discrimination (in this case, national origin discrimination), must show a specific link between a discriminatory bias and the adverse employment action, sufficient to support a finding by a reasonable fact-finder that the bias motivated the action. Torgerson, at 1045-46 (citations omitted). However, "stray remarks", "statements by nondecisionmakers", or "statements by decisionmakers unrelated to the decisional process" to not constitute direct evidence. Othman v. City of Country Club Hills, 671 F.3d. 672, 675 (8th Cir. 2012)(*citing* Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (1989).

In the instant case, plaintiff can only identify one alleged time that Higgins referred to him as a "foreigner" in a derogatory manner. Plaintiff's Deposition [35], pgs. 62-64, 71-73. Although Higgins does not recall calling plaintiff a "foreigner" especially in a derogatory manner, this alleged single remark is insufficient to constitute direct evidence of national origin discrimination. Firstly, plaintiff himself testified there was only this one single alleged instance

of a discriminatory remark by Higgins, and that no one else had ever made any type of national origin discriminatory remark to plaintiff prior to or after this one alleged instance. Secondly, Higgins issued only one of the four (4) substandard warnings - the one in July 2010. The other three (3), especially the fourth one which resulted in plaintiff's discharge, were issued by other supervisory personnel without consultation with Higgins.[5] Plaintiff has offered no evidence, other than his subjective belief, that Higgins was a "decisionmaker" or that this single alleged remark by Higgins motivated plaintiff's discharge. Plaintiff has failed to present direct evidence of national origin discrimination in violation of Title VII; and his claim is properly analyzed under McDonnell Douglas.

Under the McDonnell Douglas burden-shifting analysis, a plaintiff must first establish a *prima facie* case of discrimination (in this case, based upon national origin). Once established, the burden then shifts to the employer to articulate a legitimate, non-discriminatory reason for the challenged adverse employment action. Once the employer proffers such a reason, the burden shifts back to the plaintiff to show that the employer's "legitimate reason(s)" for the adverse employment action were not the "true reason(s)" but instead a pretext for discrimination. Although the evidentiary burdens shift back and forth, at all times, the ultimate burden of proof and persuasion that the employer intentionally discriminated, remains with the plaintiff. Guimaraes, at 973; Othman, at 676-77; Torgerson, at 1046.

To establish a *prima facie* case of discriminatory discharge, plaintiff Vokshi must establish that 1) his is a member of a protected class; 2) he met Semco's legitimate job expectations; 3) he suffered an adverse employment action; and 4) the circumstances give rise to an inference of discrimination. A plaintiff can satisfy the fourth element of the *prima facie* case in a variety of ways, including showing more-favorable treatment of similarly situated employees who are not in the protected class, or biased comments by a decisionmaker. Guimaraes, at 974 *citing* Pye v. Nu Aire, Inc., 641 F.3d. 1011,1019 (8th Cir. 2011)(citations omitted).

---

[5]Higgins attests that he signed the warnings issued on October 13, 2010 and December 16, 2010 simply as the supervisor on the floor at the time; however, the warnings were issued by Lieberoff upon his personal investigation and observation of the misconduct giving rise to the warnings. Plaintiff offers no contradictory objective evidence.

Defendant contends that plaintiff has failed to make a *prima facie* case because he wasn't meeting Semco's legitimate job expectations, as evidenced by the four (4) written warnings for substandard work. Within a six (6) month period, plaintiff received four (4) written warnings regarding substandard work; the first two (2) related to his lack of productivity and the last two (2) involved the failure to isolate and/or remove from shipping miss molded parts. These write-ups are well-documented and plaintiff doesn't dispute their substance other than to offer excuses for the documented problems; i.e., the machine was too fast, he was simply engaging in work-related conversation. As for the December write-up resulting in his discharge, plaintiff contends that Semco cannot 100% identify him as the machine operator who produced the miss molded parts and put them on the pallets for shipping. He attempts to deflect the blame on an unidentified "breaker" employee. However, both Lieberoff and Grubbs investigated thoroughly the incident of December 9, 2010. Both men were able to identify plaintiff as the machine operator responsible by the rate of production of the machine in question and the location of the miss molded parts stacked on the pallets for shipping. Plaintiff has offered nothing but speculation and conjecture that the unidentified "breaker" employee may have been responsible not him. Such conjecture, unsupported by the record, is insufficient to create a genuine issue of material fact that he met Semco's legitimate job expectations. Shanklin v. Fitzgerald, 397 F.3d. 596, 603-04 (8th Cir. 2005); Davenport v. Riverview Gardens Sch. Dist., 30 F.3d. 940, 945 (8th Cir. 1994); Hood v. Aaron Rents, Inc., 2009 WL 4828709, *2-*3 (E.D.Mo. Dec. 7, 2009). Since plaintiff failed to demonstrate that he was meeting Semco's legitimate job expectations at the time of his discharge, he fails to establish a *prima facie* case of national origin discrimination.

Furthermore, even if plaintiff had been meeting Semco's legitimate job expectations at the time of his discharge, he still has failed to meet the fourth element of his *prima facie* case. Firstly, as already discussed, plaintiff's assertion of a single discriminatory remark by Higgins is insufficient as direct evidence of national origin discrimination. This single remark without any other supporting evidence is nothing more than a "stray remark". A "stray remark, standing alone, fails to give rise to an inference of discrimination. *See*, Fisher v. Pharmacia & Upjohn, 225 F.3d. 915, 922 (8th Cir. 2000); *see also*, Arraleh v. County of Ramsey, 461 F.3d. 967, 975

(8th Cir. 2006)(*quoting* Rivers-Frison v. Southeast Mo. Cmty. Treatment Center, 133 F.3d. 616, 619 (8th Cir. 1998)("`[N]ot every prejudiced remark made at work supports an inference of illegal employment discrimination.'").

Secondly, plaintiff has failed to produce any evidence of more favorable treatment of similarly-situated employees who are not in the protected class. All plaintiff has done is make vague allegations of such favorable treatment of "non-foreign" coworkers but has failed to identify a single person. Furthermore, plaintiff has failed to identify any "non-foreign" coworker who had at least four (4) written warnings for substandard work within a six (6) month period who was not fired. Again, plaintiff has failed to establish his *prima facie* case for national origin discrimination.

*Assuming arguendo*, that plaintiff had established his *prima facie* case, he still fails to successfully challenge defendant's summary judgment motion. The defendant has articulated a legitimate, non-discriminatory reason for plaintiff's discharge; i.e. plaintiff was discharged, pursuant to Semco policy and in accordance with the applicable CBA, for accruing four (4) written warnings for substandard work in a six (6) month period.

There are at least two ways for a plaintiff to demonstrate a material question of fact regarding pretext. Guimaraes, at 975 *citing* Torgerson, at 1047. A plaintiff can show that the employer's explanation is unworthy of credence because it has no basis in fact, or a plaintiff can show pretext by persuading the court that the discriminatory animus more likely than not motivated the employer to make the challenged employment decision. Guimaraes, at 975; Torgerson, at 1047; Wallace v. DTG Operations, Inc., 442 F.3d. 1112, 1120 (8th Cir. 2006). Either way, the plaintiff still must show that the prohibited reason, rather than the employer's stated reason, actually motivated the employer's action. Guimaraes, at 975; Torgerson, at 1047; Wallace, at 1120.

There is nothing before the Court which demonstrates that Semco's stated reason for firing plaintiff was a pretext for national origin discrimination. The evidence shows that plaintiff did receive the four (4) written warning for substandard work from different supervisors. Furthermore, the evidence shows that these warnings were received by Vokshi within a six (6)

month period. Furthermore, the evidence is undisputed that receiving four (4) written warnings for substandard work within a six (6) month period is grounds for dismissal pursuant to Semco's disciplinary policy and in accordance with the applicable CBA. Finally, the undisputed evidence shows that a large number of machine operators on the same second shift as the plaintiff are foreign born individuals who were immigrants from some part of the former country of Yugoslavia. Such a high percentage of machine operators with the same national origin background, working the same second shift as the plaintiff, belies the notion that Semco was motivated by national origin discrimination in firing the plaintiff.

There are no material issues of fact disputing the dismissal of plaintiff and the defendant is entitled to judgment as a matter of law.

Dated this 14th day of August, 2012.

UNITED STATES DISTRICT JUDGE